## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CLEMENT ANDERA, | ) | CASE NO. 1:11-cv-02606 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| TERRY A. TIBBALS, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Clement Andera ("Andera"), challenges the constitutionality of his conviction

in the case of *State v. Andera*, Cuyahoga County Court of Common Pleas Case No.CR 509141.

Andera, represented by counsel, filed his Petition for a Writ of Habeas Corpus (ECF No. 1)

pursuant to 28 U.S.C. § 2254 on November 30, 2011.  On April 4, 2012, Warden Terry A.

Tibbals ("Respondent") filed his Answer/Return of Writ.  (ECF No. 8.)  Andera filed a Traverse

on June 25, 2012.  (ECF No. 11.)  For reasons set forth in detail below, it is recommended that

Andera's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court

summarized the facts underlying Andera's conviction as follows:

[*P2]  On April 5, 2008, defendant was driving his pick-up truck on Madison Avenue in Lakewood when he veered off the road onto the sidewalk and hit two trees.  Both trees broke off completely at the base of the trunk. As the trees fell, they struck three girls who were walking on the sidewalk, killing the youngest one, who was 22 months old.  The two other victims sustained injuries.  The 15 year old had a collarbone fracture, a cervical strain, and a cut on her forehead that required stitches.  She returned to school approximately three months after the accident.  The five year old had multiple fractures in her skull and collarbone, bleeding inside the brain, and a bruised lung.  She also lost partial vision in her right eye.

[*P3]  After the collision, defendant's vehicle came to a stop at the next intersection. The police arrived as defendant was pulling tree branches out of the back of his truck. Defendant told one police officer that he was eating ice cream while driving when his truck suddenly pulled to the right, and he thought he hit a couple of cars.  Defendant told another police officer that he drove over a pothole in the road that caused his truck to jump up on the sidewalk.  The police noticed that defendant was unsteady on his feet, he was mumbling and slurring his speech to the point that he was incoherent at times, his eyes were glassy, and he appeared very confused.

[*P4]  The police put defendant in the back of a patrol car to write a statement about what happened. Defendant passed out twice while writing this statement, and a third time after he was finished.  The police then had defendant perform field sobriety tests.  Defendant was unable to complete the horizontal gaze nystagmus because of a "lazy eye."  Defendant failed the one-legged stand and the walk-and-turn. Defendant told the police that he was on medication for back pain, but he does not take it while he drives.  The police arrested defendant for operating a vehicle under the influence. Defendant was placed in the back of a police vehicle to be transported to the hospital for a blood test when he passed out again.

[*P5]  The results of defendant's blood test showed that he had approximately ten times the therapeutic dosage of the sedative Diazepam (Valium) and five times the therapeutic dosage of the painkiller Hydrocodone (Vicodin) in his system at the time of the crash.

*State v. Andera*, 2010 Ohio App. LEXIS 2795, 2010-Ohio-3304 at ¶¶2-5 (Ohio Ct. App., July 15, 2010)

## II.  Procedural History

**A.    Conviction**

In April of 2008, a Cuyahoga County Grand Jury charged Andera with one count of aggravated vehicular homicide in violation of Ohio Revised Code ("O.R.C.") § 2903.06(A)(1)(a), one count of aggravated vehicular homicide in violation of O.R.C. § 2903.06(A)(2)(a), two counts of aggravated vehicular assault in violation of O.R.C. § 2903.08(A)(1)(a), two counts of vehicular assault in violation of O.R.C. § 2903.08(A)(1)(a), and one count of driving under the influence in violation of O.R.C. § 4511.19(A)(1)(a). (ECF No. 8, Exh. 1.)

On September 24, 2008, a jury found Andera guilty of aggravated vehicular homicide under O.R.C. § 2903.06(A)(1)(a), two counts of aggravated vehicular assault, and driving under the influence.  (ECF No. 8, Exh. 3.)  He was acquitted of the remaining charges.  *Id*.  On October 2, 2008, the trial court sentenced Andera to an aggregate prison term of fifteen years and assessed a fine of $26,075.  (ECF No. 8, Exh. 4.)

**B.    Direct Appeal**

On October 24, 2008, Andera, through counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising the following assignments of error:

    1.    The appellant was denied Due Process under the Fourteenth Amendment of the federal Constitution when he was not allowed to cross examine or question the weight to be afforded the field sobriety tests and whether there was substantial compliance with the standards for administering the field sobriety tests in violation of R.C. 4511.19, *State v. Boczar*, 113 OhioSt.3d 148, 2007 Ohio 1251, *State v. Dean*, Case No. 2007 P-0025, 11th Appellate District, 12-24-07.

-3-

2.    Each count the appellant was convicted of lacked a mens rea element and his right to Due Process and to have each element presented and found by the Grand and Petit Jury was violated under the Ohio and federal Constitutions; the error was structural as the jury was not instructed on the appropriate mens rea element and the statutes do not plainly indicate a purpose to make each offense a strict liability offense. *State v.Colon*, 118 Ohio St.3d 26 2008 Ohio 1624; 119 Ohio St. 3d 204 2008 Ohio 3749; *State v. Moody*, 104 Ohio St.3d 244, 2004 Ohio 6395.

3.    The appellant's confidential medical records and communications with his physicians and other health care providers were admitted against him improperly in violation of state and federal law.

4.    The trial court erred to the prejudice of the appellant in admitting Metro Hospital Medical records in violation of the appellant's right to confront his accuser under the Sixth and Fourteenth Amendments of the federal Constitution.

5.    The admission of "other acts" evidence denied the appellant a fair trial and Due Process under the state and federal Constitutions.

6.    The trial court erred to the prejudice of the appellant by excusing two jurors sua sponte over the objection of the appellant and in violation of Due Process under the Fourteenth Amendment of federal Constitution and in violation of Crim R 24.

7.    The trial court failed to consider the appellant's present and future ability to pay a fine in the amount of $26,075 in violation of R.C. 2929.19 (B)(6) and whether counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution by not objecting.

8.    The trial court erred to the prejudice of the appellant in failing to give requested lesser included offenses to the jury in violation of the Fourteenth Amendment of the federal Constitution and *State v. Evans*, syl 2, 2009 Ohio 2974.

9.    Prosecutorial misconduct deprived the appellant of a fair trial in violation of the Fourteenth Amendment of the federal Constitution

10.   The admission of the decedent's autopsy photos violated Evid R 403(A) and the Fourteenth Amendment of the federal Constitution.

11.   The appellant's sentence is contrary to Ohio law and the trial judge abused her discretion by imposing a cumulative sentence of 15 years and a lifetime

driver's license suspension for "strict liability" offenses when no *mens rea* was alleged or proven.

12. The cumulative errors in this case deprived the appellant of a fair trial and fair sentencing hearing in violation of the Fourteenth Amendment.

(ECF No. 8, Exhs. 5 & 6.)

On July 15, 2010, Andera's conviction was affirmed.  (ECF No. 8, Exh. 8.)

On August 27, 2010, Andera, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio raising the same propositions of law as before the state appellate court.  (ECF No. 8, Exhs. 9 & 10.)  On December 1, 2010, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 11.)

## C.   Federal Habeas Petition

On November 30, 2011, Andera filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> GROUND ONE: The appellant was denied Due Process under the Sixth and Fourteenth Amendments of the federal Constitution when he was not allowed to cross examine or question the weight to be afforded the field sobriety tests and whether there was substantial compliance with the standards for administering the field sobriety tests in violation of R.C. 4511.19, *State v. Boczar*, 113 Ohio St.3d 148, 2007 Ohio 1251, *State v. Dean*, Case No. 2007 P-0025, 11th Appellate District, 12-24-07.

> GROUND TWO: Each count the appellant was convicted of lacked a mens rea element and his right to Due Process and to have each element presented and found by the Grand and Petit Jury was violated under the Ohio and federal Constitutions.  The error was structural as the jury was not instructed on the appropriate mens rea element and the statutes do not plainly indicate a purpose to make each offense a strict liability offense. *State v.Colon*, 118 Ohio St.3d 26 2008 Ohio 1624; 119 Ohio St. 3d 204 2008 Ohio 3749; *State v. Moody*, 104 Ohio St.3d 244, 2004 Ohio 6395

> GROUND THREE: The appellant's confidential medical records and communications with his physicians and other health care providers were admitted against him improperly in violation of state and federal law and the

-5-

Fourteenth Amendment of the federal Constitution.

GROUND FOUR: The trial court erred to the prejudice of the appellant in admitting Metro Hospital Medical records in violation of the appellant's right to confront his accuser under the Sixth and Fourteenth Amendments of the federal Constitution.

GROUND FIVE: The admission of "other acts" evidence denied the appellant a fair trial and Due Process under the state and federal Constitutions.

GROUND SIX: The trial court erred to the prejudice of the appellant by excusing two jurors sua sponte over the objection of the appellant and in violation of Due Process under the Fourteenth Amendment of federal Constitution and in violation of Crim R 24.

GROUND SEVEN: The trial court failed to consider the appellant's present and future ability to pay a fine in the amount of $26,075 in violation of R.C. 2929.19 (B)(6) and counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution by not objecting.

GROUND EIGHT: The trial court erred to the prejudice of the appellant in failing to give requested lesser included offenses to the jury in violation of the Fourteenth Amendment of the federal Constitution and State v. Evans, syl 2, 2009 Ohio 2974.

GROUND NINE: Prosecutorial misconduct deprived the appellant of a fair trial in violation of the Fourteenth Amendment of the federal Constitution.

GROUND TEN: The admission of the decedent's autopsy photos violated Evid R 403(A) and the Fourteenth Amendment of the federal Constitution.

GROUND ELEVEN: The petitioner's sentence is contrary to Ohio law and the trial judge abused her discretion by imposing a cumulative sentence of 15 years and a lifetime driver's license suspension for "strict liability" offenses when no mens rea was alleged or proven; the petitioner's rights under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment of the federal Constitution have been violated.

GROUND TWELVE: The cumulative errors in this case deprived the appellant of a fair trial and fair sentencing hearing in violation of the Fourteenth Amendment.

(ECF No. 1.)

Andera, however, withdrew grounds four and seven in his Traverse. (ECF No. 11 at 14,

-6-

18.)

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.  *See Parker v. Matthews,* 567 U.S. –, 2012 WL 2076341, *6 (U.S. Jun. 11,

2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529

U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an

explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and

standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."

*Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The

Supreme Court has indicated, however, that circuit precedent does not constitute "clearly

established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6;

*Howes v. Walker,* – S.Ct. –, 2012 WL 508160 (U.S. Jun. 11, 2012).

-7-

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id*. at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice

systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Court readily acknowledges. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

**A. Grounds One: Confrontation Clause**

In ground one, Andera asserts that his right to confront the witnesses against him was violated when defense counsel was not permitted to cross examine a witness concerning the administration of field sobriety tests. (ECF No. 1 at 16.) Respondent argues that Andera's counsel had ample opportunity to cross-examine the police officer who testified concerning the field sobriety test.[1]

With respect to ground one, the state appellate court found as follows:

[*P9] In an OVI case, a police officer may testify about the results of the defendant's field sobriety tests if the prosecution shows that the tests were administered in substantial compliance with the testing standards. R.C. 4511.19(D)(4)(b); *State v. Boczar*, 113 Ohio St.3d 148, 2007 Ohio 1251, 863 N.E.2d 155. Once the test results are deemed admissible, the reliability of the evidence may be challenged by the defense on cross-examination, and "the trier of fact shall give it whatever weight the trier of fact considers to be appropriate." R.C. 4511.19(D)(4)(b)(iii).

[*P10] In the instant case, Lakewood Police Investigator Todd Allen was one of the first officers to arrive at the site of the crash, and he later administered

---

[1] Respondent also avers that Andera did not actually make a Confrontation Clause argument with respect to ground one on direct appeal. (ECF No. 8 at 14.) This Court's own review of Andera's appellate brief confirms that no Confrontation Clause argument was presented. Andera relied solely on state law. (ECF No. 8, Exh. 6.) However, Respondent has not argued that this claim is procedurally defaulted.

defendant's field sobriety tests. He testified extensively about field sobriety tests in general, his training and qualifications to administer them, and defendant's performance of the tests on the night in question. Additionally, defendant cross-examined Investigator Allen about these same issues.

[*P11] The court allowed defense counsel to ask Investigator Allen whether he believed that he complied with the National Highway Traffic Safety Administration's standards for field sobriety tests regarding defendant. Investigator Allen replied, "Yes." Furthermore, the videotape taken from Investigator Allen's dash-cam of defendant performing these tests was shown to the jury twice. Investigator Allen testified that in deciding whether to arrest a suspected impaired driver, the police look at "[e]verything from the initial contact with him till the point where he completes the sobriety test. It's not just based solely on how they do on those tests, but it also depends on your interaction with the person and what other clues or evidence you might pick up while speaking to them." Investigator Allen further testified that, in his opinion, defendant "was impaired and it affected his ability to operate the motor vehicle."

[*P12] Accordingly, we find that defendant was given the opportunity to challenge the reliability of his field sobriety tests and his due process rights were not violated.

*Andera*, 2010-Ohio-3304 at ¶¶9-12.

The Sixth Amendment's Confrontation Clause guarantees the right of a criminal defendant in a state or federal prosecution "to be confronted with the witnesses against him." U.S. Const. Amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 407 (1965); *accord Davis v. Alaska*, 415 U.S. 308 (1974). Cross-examination is a "primary interest" secured by the Confrontation Clause; indeed, it "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415 U.S. at 315–16 (internal quotations omitted).

Andera complains that he was not permitted to ask unspecified questions concerning the administration of field sobriety tests. The trial court, after a sidebar discussion that is not in the record, sustained the prosecution's objection when defense counsel asked the witness to testify as to how the National Highway Transportation Safety Administration (NHTSA) field sobriety

test is administered.  (Tr. 510-11.)  The court also disallowed a question about whether the witness was certified by the NHTSA to perform field sobriety tests, though that question had already been asked and answered.  (Tr. 510, 514.)  Finally, the court sustained a third objection where defense counsel asked the witness to speculate as to whether Andera was attempting to be compliant.  (Tr. 529.)  Otherwise, Andera's counsel extensively cross-examined the witness.

The Supreme Court has held that while there is a constitutionally protected right of cross-examination, "[i]t does *not* follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (emphasis added).  The Supreme Court observed that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Id*.; *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.")  The trial judge's decision to bar testimony about how the NHTSA is generally administered, while permitting broad cross-examination as to how the test was actually administered to Andera and as to Andera's performance, does not fall outside this wide latitude.

Furthermore, even if this Court were to find that the court impermissibly limited Andera's constitutional right to cross-examine the witness, such a violation would be subject to harmless error analysis.  *See, e.g., Hargrave v. McKee*, 248 Fed. Appx. 718, 728 (6th Cir. 2007)

-11-

("Unconstitutional limitations on cross-examination are normally subject to harmless-error analysis."); *Dittrich v. Woods*, 419 Fed. Appx. 573, 578 (6th Cir. 2011) ("We review a habeas petitioner's claim of Confrontation Clause violations for harmless error.")  In *Van Arsdall*, the Supreme Court held that "[w]hether the error is harmless beyond a reasonable doubt depends on the following factors: 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *United States v. Gabrion*, 648 F.3d 307, 337-338 (6th Cir. 2011), *vacated by* 2011 U.S. App. LEXIS 23290 (6th Cir. Nov. 17, 2011).  In a recent decision, the Sixth Circuit explained that the appropriate inquiry "is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Babcock v. Metrish*, 2012 U.S. App. LEXIS 5035 at ** 7-8 (6th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

> [T]he United States Supreme Court has explained that the district court judge should ask him or herself "'Do I, the judge, think that the error substantially influenced the jury's decision?'"  *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995).  "If the judge is certain that the error had no or a small effect, the verdict must stand.  However, if the matter is so evenly balanced that the judge has 'grave doubts' as to whether the trial error had substantial or injurious effect or influence in determining the jury's verdict, such that the matter is so evenly balanced that he feels himself in a 'virtual equipoise' as to harmlessness, the judge must treat the error as if it were harmful and grant the petitioner's writ."  *Jensen v. Romanowski*, 590 F.3d 373, 378 (6th Cir. 2009), quoting *O'Neal*, 513 U.S. at 435 & 445; *Stallings v. Bobby*, 464 F.3d 576, 582 (6th Cir. 2006).

*Id*. at ** 7-8.

Utilizing the *O'Neal* test, the Court finds that any violation of the Confrontation Clause

-12-

herein had minimal effect. In the present matter, the significance of the disallowed questions is minor given the cross-examination that was allowed and the overwhelming evidence, including blood tests, that demonstrated Andera had an excessive amount of drugs in his system. As such, this Court is confident that no substantial and injurious effect or influence on the jury's verdict is present here.

## B. Ground Two: Lack of *Mens Rea* in the Indictment and Jury Instructions

As this Court understands Andera's argument in ground two, it contains two components. First, it appears that Andera believes the indictment against him was constitutionally deficient in that it failed to allege a *mens rea* element. Second, Andera argues that the offenses for which he was convicted were not strict liability offenses under Ohio law. (ECF Nos. 1 & 11.) Respondent submits that Andera's argument – that the relevant offense requires proof of *mens rea* – is not cognizable on federal habeas review. (ECF No. 8 at 17-18.) In addition, Respondent contends that federal courts are bound by the state court's interpretation of state law. *Id.*

The state appellate court addressed Andera's assignment of error as follows:

> [*P14] "II. Each count the appellant was convicted of lacked a mens rea element and his right to due process and to have each element presented and found by the grand and petit jury was violated under the Ohio and Federal Constitutions. The error was structural as the jury was not instructed on the appropriate mens rea element and the statutes do not plainly indicate a purpose to make each offense a strict liability offense."

> [*P15] In *State v. Colon*, 118 Ohio St.3d 26, 2008 Ohio 1624, 885 N.E.2d 917 (*Colon I*), the Ohio Supreme Court held that an indictment for robbery in violation of R.C. 2911.02(A)(2) was defective because it failed to charge an essential element of the crime, namely, the mens rea of recklessness. The court further held that Colon's defective indictment resulted in structural errors permeating his entire trial. *Id.* at P19. The Ohio Supreme Court clarified this holding by issuing *State v. Colon*, 119 Ohio St.3d 204, 2008 Ohio 3749, 893 N.E.2d 169 (*Colon II*), which limited the structural error analysis to "rare cases * * * in which multiple errors at the trial follow the defective indictment." *Id.* at

-13-

P8. The standard of review for the remaining defective-indictment cases is plain error.  *Id*. at P7.

[*P16]  This defective-indictment challenge does not apply to criminal offenses "that plainly impose strict liability." *Colon I*, at P11.

[*P17]  In the instant case, defendant was convicted of three offenses.  First, OVI in violation of R.C. 4511.19(A)(1)(a), which states in part: "No person shall operate any vehicle * * * if * * * [t]he person is under the influence of * * * a drug of abuse * * *."  Second, aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), which states in part: "No person, while operating * * * a motor vehicle * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code * * *."  Third, aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), which states in part: "No person, while operating * * * a motor vehicle * * * shall cause serious physical harm to another person * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code."

[*P18]  Revised Code 4511.19(A)(1)(a) is a strict liability statute.  *City of Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32; *State v. Cleary* (1986), 22 Ohio St.3d 198, 22 Ohio B. 351, 490 N.E.2d 574. The State need only prove that an offender was "under the influence" while operating a vehicle.  In respect to alcohol, R.C. 4511.19(A)(1)(b)-(i) lists various concentration levels that, if found in an offender's body, constitute a per se violation of the statute.  For "drugs of abuse," R.C. 4511.19(A)(1)(j) lists concentration levels of certain controlled substances, such as cocaine or marihuana, that constitute being "under the influence" as a matter of law.  However, for controlled substances not listed in the statute, such as the Vicodin and Valium, which defendant had in his system at the time of the offense, no threshold level of concentration is required to find a per se violation under the statute.

[*P19]  Defendant's criminal intent is irrelevant in determining whether he was under the influence in terms of R.C. 4511.19(A)(1)(a).  Rather, the relevant question is whether his ability to operate a motor vehicle was impaired as a result of being "under the influence."  This determination is made taking into consideration common-sense observations, field sobriety tests, breath, blood, urine, or hair tests determining the amount of alcohol or drugs in an offender's system, and other indicators that constitute the totality of the circumstances. See *State v. Smith* (Feb. 27, 1998), Ottawa App. No. OT-97-037, 1998 Ohio App. LEXIS 718 (holding that a properly prescribed medication could be the basis for an arrest under R.C. 4511.19(A)(1) if it impaired the user's driving); *State v. BoCook* (Oct. 6, 1992), Ross App. No. 1813, 1992 Ohio App. LEXIS 5102 (holding that "[t]he fact that BoCook took only the prescribed dosage of Valium does not make her immune from prosecution under R.C. 4511.19(A)(1) if her

-14-

driving was impaired"). See, also, *State v. Hardy* (1971), 28 Ohio St.2d 89, 90, 276 N.E.2d 247 (defining "under the influence of alcohol" as "any degree in the consumption of alcohol * * * which tends to deprive the one so using it of the clearness of intellect and control of himself which he would otherwise possess").

[*P20]  Because defendant's OVI conviction is a strict liability offense, his convictions for aggravated vehicular homicide and aggravated vehicular assault, which were predicated upon his violation of R.C. 4511.19(A)(1), are strict liability offenses as well.  See *State v. Gagnon*, Lucas App. No. L-08-1235, 2009 Ohio 5185; *State v. West*, Montgomery App. No. 23547, 2010 Ohio 1786.

[*P21]  Accordingly, the indictment need not allege, and the State need not prove, a particular mens rea for defendant to be found guilty of these offenses.

*Andera*, 2010-Ohio-3304 at ¶¶14-21.

Andera disputes the state appellate court's finding that the offenses of which he was convicted are strict liability offenses.  (ECF No. 11 at 11-12.)  Although Andera argues that the state appellate court's decision was incorrect, this Court cannot overrule the interpretation of state law.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state.")  In fact, "[a] federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes."  *Riley v. Woods*, 2010 U.S. Dist. LEXIS 81453 at **11-12 (E.D. Mich., Aug. 11, 2010) (*citing Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002); *Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998)).  As such, Andera's argument, that the state appellate court erred by designating the offenses as ones imposing strict liability, is not cognizable upon federal habeas review.  It follows, therefore, that there is no *mens rea* element to the relevant offenses.  Because the federal guarantee of a grand jury indictment does not apply to the states "[b]eyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002); *Koontz*

*v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).  Consequently, Andera's argument that his indictment failed to give him notice of a *mens rea* element is meritless due to the strict liability nature of the offenses.

**C.     Grounds Three and Ten: Admission of Medical Records and Autopsy Photos**

In ground three, Andera asserts that the admission of his medical records contravened state law and federal regulations.  In ground ten, he asserts that the admission of autopsy photos violated Ohio Evid. R. 403(A) and the Fourteenth Amendment of United States Constitution. These grounds for relief fail to state cognizable claims.

Alleged trial errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are typically not cognizable on habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  "[Q]uestions concerning the admission of evidence that may be unfairly prejudicial are committed to the sound discretion of the trial court."  *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979); *see also Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (citations omitted).  Such claims are only cognizable where the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights."  *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

Therefore, whether the state court erred in admitting the complained of evidence fails to state a claim.  With respect to ground three, Andera cannot reasonably contend that admission of

-16-

his medical records rendered his trial fundamentally unfair.  As found by the state appellate

court, Andera's defense – that he was simply following his doctors' prescribed treatment by

taking the medication – was futile, explaining as follows:

> [*P26]  In the instant case, defendant repeatedly raised the issue of his medical
> condition.  From the time of his arrest, he admitted to taking prescription pills for
> a back injury and used his back pain as an excuse for failing the one-legged-stand
> field sobriety test.  He never denied that he was "under the influence" when
> driving; rather, his defense was that this tragedy was an accident because he was
> following the advice of his doctors by taking his prescription medication.
> Defendant's cross-examination of multiple witnesses probed into whether he took
> his medication as prescribed.
>
> [*P27]  Ultimately, this defense is futile because R.C. 4511.19 is a strict liability
> statute.  Whether an offender took medication prescribed to him or ingested an
> illegal drug, such as heroin or crack cocaine, that he bought off the street is
> irrelevant. Whether an offender was under the influence when operating a motor
> vehicle is the issue-at-hand.  Our review of the record shows that defendant's
> medical history had no relevance to the case-at-hand.  However, the properly
> admitted evidence against him was overwhelming.
>
> [*P28]  The results of defendant's blood test showed an excessive amount of
> drugs in his system. This evidence is admissible pursuant to R.C.
> 2317.02(B)(1)(c). Several police officers testified that defendant was impaired at
> the time of the offense, slurring his speech, swaying back and forth, and nodding
> off. Defendant failed two field sobriety tests and was unable to complete a third.
> This evidence is enough to show defendant was "under the influence of * * * a
> drug of abuse."  Defendant's medical records, other than the blood test results,
> were cumulative and irrelevant, and as a general rule, would be privileged and
> inadmissible in an aggravated vehicular homicide case, had defendant not opened
> the door to admissibility by raising the issue.
>
> [*P29]  Additionally, any error in allowing defendant's medical records at trial
> would  have been harmless in light of the overwhelming evidence against him.
> Crim.R. 52(A).

*Andera*, 2010-Ohio-3304 at ¶¶27-29.

Assuming, for the sake of argument only, that admission of Andera's medical records

violated *state* law, the admission of said evidence did not deprive Andera of a fundamentally fair

trial, as the evidence was neither necessary to convict him nor likely to cause any undue

prejudice.

Andera also argues that admission of his records violated the Health Information Portability

and Accountability Act of 1996 ("HIPAA").  (ECF No. 11 at 12-13.)  Andera, however, fails to

cite *any* law suggesting that a HIPAA violation may serve as a basis for habeas relief, let alone

any clearly established federal law as determined by the Supreme Court of the United States.[2]

Furthermore, Andera has failed to conclusively establish that the admission of his medical

records violated HIPAA, as HIPAA permits disclosure of protected health information in the

course of any judicial proceeding under certain conditions.  *See* 45 C.F.R. § 164.512(e).

Although not in a habeas proceeding, this Court has previously observed that:

> Plaintiffs also argue that a fundamental interest is at stake because of the manner
> in which the disclosure occurred.  Specifically, it appears that plaintiffs' primary
> argument is that defendants improperly disclosed the information in violation of
> the physician-patient privilege.  Plaintiffs point to no law suggesting that the
> physician patient-privilege arises from the Constitution.  Further, in the Sixth
> Circuit the release of medical records does not implicate a fundamental right.
> *See, e.g., Summe v. Kenton County Clerk's Office*, 604 F.3d 257 (6th Cir. 2010)
> (assuming *arguendo* that the information constituted a medical record, its release
> did not violate a constitutional right to informational privacy); *Jarvis v. Wellman*,
> 52 F.3d 125 (6th Cir. 1995)("Disclosure of plaintiff's medical records does not rise
> to the level of a breach of a right recognized as 'fundamental' under the
> Constitution."). *Mann v. University of Cincinnati*, 114 F.3d 1188 (6th Cir. 1997)
> (noting that the Sixth Circuit has consistently rejected the argument that the
> disclosure of medical records violates a fundamental right).

*Shepherd v. Sheldon*, 2011 U.S. Dist. LEXIS 79659, 12-13 (N.D. Ohio July 21, 2011) (Gaughan,

J.) (footnotes omitted).  Therefore, Andera's argument that the disclosure of his medical records

---

[2]  Though Andera's traverse cites *Hicks v. Oklahoma*, 447 U.S. 343 (1980), the Court
fails to see how that decision supports Andera's argument, and Andera offers no
explanation.  (ECF No. 11 at 13.)

-18-

violated clearly established federal law is without merit.

With respect to ground ten, Andera cannot reasonably contend that admission of the autopsy photographs rendered his trial fundamentally unfair.  The state appellate court addressed the issue as follows:

> [*P69]  The admissibility of photographs at trial is reviewed for an abuse of discretion. Autopsy photographs in particular are admissible, despite being gruesome, if the probative value of the picture outweighs the danger of it being prejudicial to the accused.  *State v. Craig*, 110 Ohio St.3d 306, 2006 Ohio 4571, 853 N.E.2d 621; Evid.R. 403(A).
>
> [*P70]  In the instant case, the State introduced into evidence two autopsy photographs of the 22-month-old victim.  In admitting the pictures, the court stated that "this is the most restrained set of autopsy photos I've ever been asked to introduce.  There are no duplicatives.  Yes, they're horrible to look at but they do show the injuries so they're absolutely relevant."
>
> [*P71]  Defendant did not dispute the cause of death; therefore, the probative value of the photographs was limited.  However, defendant failed to argue how these photographs were prejudicial given the strength of the State's case against him. We reached a similar conclusion in *State v. Goshay* (Nov. 18, 1993), Cuyahoga App. No. 63902, 1993 Ohio App. LEXIS 5551.  "The admission of this photograph into evidence was harmless error beyond a reasonable doubt. * * * [I]t possessed no probative value upon which the jury could reasonably base any inference of guilt. Although the photograph may have been gruesome to some individuals, it was not so macabre or sensually shocking that it would inflame the jury or impair its ability to make an objective determination."  The *Goshay* court concluded the error harmless in light of "overwhelming evidence in support of Goshay's conviction."  *Id*.
>
> [*P72]  Assuming arguendo that the court abused its discretion in admitting the autopsy photographs in the instant case, we hold that the error was harmless. Nothing in the record suggests that the jury convicted defendant based on the photographs.

*Andera*, 2010-Ohio-3304 at ¶¶69-72.

Andera has failed to point to any clearly established *federal* law suggesting that the admission of autopsy photographs, even where there is no dispute that the defendant caused the

-19-

death of the victim, would render a trial fundamentally unfair.  In fact, case law from within the Sixth Circuit tends to support the contrary conclusion.  *See, e.g., Cooey v. Coyle*, 289 F.3d 882, 894 (6th Cir. 2002) (finding that a claim that a gruesome photo of decedent was erroneously admitted does not deprive a defendant of fundamental fairness so as to violate due process) (*citing Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997)); *accord Gilbert v. Barnhart*, 2012 U.S. Dist. LEXIS 7422 at *19 (E.D. Mich. Jan. 23, 2012); *Davie v. Mitchell*, 291 F. Supp. 2d 573, 601 (N.D. Ohio 2003) ("As a general rule, a challenge to admission of crime scene and similar victim-related photos fails to state a constitutional claim, and thus is not cognizable in a habeas proceeding.")  In addition, it is reasonable to conclude that the evidence against Andera was overwhelming and that the admission of the autopsy photos was harmless.  Ground ten is without merit.

**D.    Ground Five: "Other Acts" Evidence**

In ground five of the petition, Andera asserts that the admission of "other acts" evidence denied him a fair trial and violated due process.  Specifically, Andera objects to evidence of two other "minor traffic accidents."  As discussed above, alleged errors in state evidentiary rulings are not cognizable.  Although the state appellate court agreed that the trial court should not have allowed the propensity evidence related to Andera's other impaired driving, it concluded that this was harmless based on the overwhelming evidence of guilt.  *Andera*, 2010-Ohio-3304 at ¶42.)

In *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), the Sixth Circuit addressed a claimant's argument that certain "other acts" evidence "poisoned the trial and violated [his] right to a fundamentally fair trial," because it served only to demonstrate that he was a "bad man."

The *Bugh* court held that "the admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent. There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."[3] *Id*. at 512; *accord Paige v. Bradshaw*, 2007 U.S. Dist. LEXIS 93324 (N.D. Ohio Apr. 4, 2007) (containing a lengthy discussion of the common law roots of the rule against the admission of propensity evidence, but ultimately finding that federal habeas courts cannot find that state court rulings allowing propensity or other acts evidence are contrary to, or involve an objectively unreasonable application of, clearly established federal law.) In *Estelle*, 502 U.S. 62, 75 (1991), the Supreme Court declined to hold that the admission of prior acts evidence violated due process. The *Estelle* Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id*. at 75 n. 5, 112 S.Ct. 475. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see *Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

Absent any clearly established Supreme Court precedent to the contrary, this Court cannot find that Andera was denied a fundamentally fair trial due to the admission of the challenged evidence.

---

[3] Notably, the *Bugh* court was also confronted with a situation where the state court did not address the federal issue.

-21-

### E.    Ground Six: Dismissal of Jurors

In his sixth ground for relief, Andera claims the trial court committed prejudicial error when it excused two jurors *sua sponte* over objection thereby violating the Due Process Clause of the Fourteenth Amendment and Criminal Rule 24(B).  (ECF No. 1 at 20-21.)  The state appellate court explained the facts surrounding the dismissal of the jurors as follows:

> [*P46]  In the instant case, the court excused one juror because she twice violated the court's admonition to not use cell phones.  In excusing this juror, the court stated the following on the record: "I don't trust [juror] number 10 to follow any of my rules anymore.  She's left the jury room and she's been on the phone.  I believe number 10 was deliberate * * *.  [A]s I told you yesterday, we have rules for a reason.  And jurors have been caught on cell phones talking to people about cases.  They have been caught talking about what's going on in the courtroom and we can't have any confidence in the system if people break the rules. So I'm not trying to be arbitrary with you.  There's really a reason behind the rules."

> [*P47]  The court then excused a second juror right before closing arguments because the juror had an out of town business trip scheduled for the next day.  The court reasoned that this juror had brought his business trip to the court's attention twice, "and it's obviously starting to become something that's distracting * * *." The court added that it did not want the jury rushing through deliberations.  The court replaced both excused jurors with alternate jurors.

*Andera*, 2010-Ohio-3304 at ¶¶46-47.

The state court found no abuse of discretion by the trial judge, and noted that Andera "fails to support his argument with legal authority and he fails to argue how the court abused its discretion in excusing the two jurors."  *Id*.  To the extent Andera is alleging a violation of state law, such claim is not cognizable.  As on direct appeal, Andera here fails to cite any legal authority suggesting that it is an error of constitutional dimension to dismiss a juror under these circumstances.  He also does not challenge the state appellate court's portrayal of the facts surrounding the dismissal, but does characterize the removal of the jurors as "drastic action." (ECF No. 11 at 16-17.)  Andera proceeds to argue that the dismissal demonstrates that the trial

judge was not impartial.  *Id.*  "[T]he trial court's allegedly improper excusal of one of the

potential jurors for cause does not rise to error of constitutional dimension."  *Gross v. Jackson*,

2008 U.S. Dist. LEXIS 37095 (S.D. Ohio May 6, 2008).  The Supreme Court has stated that "an

impartial jury consists of nothing more than 'jurors who will conscientiously apply the law and

find the facts.'"  *Lockhart v. McCree*, 476 U.S. 162, 178 (1986) (emphasis omitted) (quoting

*Wainwright v. Witt*, 469 U.S. 412, 423 (1985).  Andera has presented no evidence that the

substitute jurors were biased, unable, or unwilling to properly perform their duties.

As such, ground six is without merit.

**F.    Ground Eight: Lesser Included Offenses**

In his eighth ground for relief, Andera argues that the trial court erred by failing to instruct

the jury on lesser included offenses, thereby violating both the Fourteenth Amendment of the

federal Constitution and Ohio law.  (ECF Nos. 1 & 11.)

Respondent argues that the failure to give a lesser included offense instruction is only

cognizable in a capital murder case.  (ECF No. 8 at 32-33.)  "[T]he Sixth Circuit has held that

failure to instruct on a lesser included offense in a noncapital case is not such a fundamental

defect as inherently results in a miscarriage of justice or an omission inconsistent with the

rudimentary demands of fair procedure."  *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (*quoting*

*Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990)).  In *Bagby*, the Sixth Circuit found that the

failure to instruct on lesser included offenses in a non-capital case "is not an error of such

character and magnitude to be cognizable in federal habeas corpus review." 894 F.2d at 797

(noting that this view is shared by a majority of the circuits); *accord Koras v. Robinson*, 123 Fed.

Appx. 207, 214-215 (6th Cir. 2005) ("due process violation occurs only when the failure to

consider and give a lesser-included offense instruction in a non-capital case amounts to a defect so fundamental as to cause a complete miscarriage of justice."); *Coleman v. Sheets*, 2011 U.S. Dist. LEXIS 153783 at *21 (N.D. Ohio Dec. 27, 2011).

Andera does not challenge the law cited by Respondent, but rather argues that this Court should not apply AEDPA "because it is unconstitutional."  (ECF No. 11 at 19.)  Since Andera is not *pro se* and his counsel's argument is not at all developed, the Court deems it waived.[4]  The state appellate court  addressed the lesser included offense claim as follows:

> [*P56]  In *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, the Ohio Supreme Court established a three-part test to determine whether a jury instruction on a lesser included offense is appropriate.  "An  [**23] offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."  *Id*. at paragraph three of the syllabus.

> [*P57]  Furthermore, in *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, the Ohio Supreme Court held that "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."  *Id*. at paragraph two of the syllabus.

> [*P58]  In the instant case, defendant requested lesser included offense instructions for the aggravated vehicular homicide counts under R.C. 2903.06. Defendant was indicted for violating subsection (A)(1), which governs causing the death of another as a result of driving under the influence.  He requested instructions for subsections (A)(3)(a), which governs causing the death of another "negligently" and (A)(4), which governs causing the death of another as a result

---

[4]  It is not this Court's function to find law or evidence to support Andera's undeveloped and conclusory "argument."  *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citations omitted).

of committing a minor misdemeanor violation of R.C. Title 45 of the Revised Code.

[*P59]  A review of the evidence in the record shows that defendant operated a vehicle while under the influence of prescription drugs; it does not show that defendant acted negligently.  Additionally, defendant's conviction under R.C. 4511.19 is a first degree misdemeanor, not a minor misdemeanor. As such, jury instructions on 2903.06(A)(3)(a) and (A)(4) were not warranted.

[*P60]  Defendant also requested lesser included offense instructions for the four aggravated vehicular assault charges under R.C. 2903.08. Specifically, defendant requested that he be charged with violating R.C. 2903.08(A)(1), which governs causing serious physical harm to someone as a result of unsafely operating an aircraft.  Defendant also requested an instruction on R.C. 2903.08(A)(3), which governs causing serious physical harm to another as the result of operating a vehicle in a construction zone. Although defendant argued to the court that R.C. 2903.08(A)(3) was "not limited to a construction zone," we find no law to support this assertion.  Neither do we find evidence in the record regarding a construction zone nor an aircraft.

[*P61]  Accordingly, the court did not err in denying defendant's request for lesser included offense instructions. Assignment of Error VIII is overruled.

*Andera*, 2010-Ohio-3304 at ¶¶56-61.

"[E]ven if a state court erred in its interpretation of state law, it is not for a federal court to correct the error."  *Brown v. Jago*, 1991 U.S. App. LEXIS 7812 (6th Cir. 1991).  Errors of state law are generally not cognizable unless said error renders a petitioner's trial so fundamentally unfair as to constitute a denial of federal rights.  Andera, however, has not identified any error in the state appellate court's determination.  Even were this Court to assume that the failure to give lesser-included offense instructions was erroneous, given the facts of this case, the Court cannot find that such failure resulted in a defect so fundamental as to cause a complete miscarriage of justice.

As such, ground eight is without merit.

## G. Ground Nine: Prosecutorial Misconduct

In his ninth ground for relief, Andera asserts that prosecutorial misconduct deprived him of a fair trial in violation of the Fourteenth Amendment of the United States Constitution. (ECF No. 1.)

To reach a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate statements warrant a reversal. *See United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994). First, a court must determine whether a prosecutor's statements were improper followed by a second determination as to whether the impropriety constitutes reversible error. *DeJohn*, 368 F.3d at 548. The following four factors are used to determine whether reversal is necessary: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.*, *quoting Carroll*, 26 F.3d at 1385. Further, prosecutorial misconduct claims are subject to harmless error analysis. *See Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2006). ("An error is found to be harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'") (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

The state appellate court concluded as follows:

> [*P63] Specifically, defendant argues that the prosecutor violated his rights in three ways: first, by introducing his medical records at trial as argued in his third

-26-

assignment of error; second, by introducing "other acts" evidence at trial as argued in his fifth assignment of error; and third, by making improper comments during closing arguments that "appeal[ed] to the passion of the jury."

[*P64]  We overruled defendant's third and fifth assignments of error, and as a result, we conclude that the prosecution's introduction of defendant's medical records and 'other acts" evidence does not amount to misconduct.  We review the prosecutor's remarks during closing arguments under the proper standard.

[*P65]  "The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected  substantial rights of the accused." *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293.  When misconduct is alleged during closing arguments, an appellate court must examine the entire statement to determine whether the result of the proceedings would have been different had the prosecutor not made the remarks at issue.  *State v. Treesh*, 90 Ohio St.3d 460, 2001 Ohio 4, 739 N.E.2d 749; *State v. Loza* (1990), 71 Ohio St.3d 61, 1994 Ohio 409, 641 N.E.2d 1082.

[*P66]  In the instant case, defendant argues that it was improper for the prosecutor to say the following during closing arguments: "take [defendant] off [of] the streets of our community."  We find nothing inflammatory or prejudicial about this comment.  As stated earlier in this opinion, the evidence against defendant was overwhelming, and we will not conclude that his convictions were the result of an improper appeal to the jury's passions.

*Andera*, 2010-Ohio-3304 at ¶¶63-66.

Andera's arguments are redundant of his claims raised before the state appellate court. There is nothing objectively unreasonable or incorrect in that court's findings.  First, the admission of the complained of evidence was ultimately within the trial judge's discretion.  In addition, this Court agrees that there is nothing unduly inflammatory or prejudicial about the prosecutor's closing argument, especially in light of the strong evidence against Andera.  The complained of conduct simply did not have a substantial or injurious effect on the outcome of the case.

**H:   Ground Eleven: Sentence**

In ground eleven, Andera argues that his sentence is contrary to Ohio law and that the trial

judge abused her discretion by imposing a cumulative sentence of fifteen (15) years and a lifetime driver's license suspension given that he was convicted of a "strict liability" offenses where no *mens rea* was alleged or proven. (ECF No. 1.) Consequently, Andera asserts, his rights under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment were violated. *Id*. In addition, he argues that defense counsel was constitutionally ineffective for failing to cite examples of other cases where offenders received lesser sentences. (ECF No. 11 at 22-25.)

Respondent counters that Andera's Sixth Amendment or Due Process Clause claim in ground eleven is procedurally defaulted, as it was never presented to the state courts. (ECF No. 8 at 41.) The Court agrees. A petitioner may procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *see also Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.[5] *Id*.

Andera did not fairly present the Sixth Amendment or Due Process Clause violations

_____

[5] In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Engle*, 456 U.S. at 125 n. 28. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

alleged in ground eleven to the state courts as a distinct *federal* constitutional claim.  A claim is

adequately raised on direct appeal if it was "fairly presented" to the state court.  To fairly present

a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See*

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present

his claim to the state courts as a federal constitutional issue--not merely as an issue arising under

state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four

actions in his brief which are significant to the determination as to whether a claim has been

fairly presented as a federal constitutional claim: "(1) reliance upon  federal cases employing

constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a

denial of a specific constitutional right; or (4) alleging facts well within the mainstream of

constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

On direct appeal, Andera relied solely on state cases and state law.  Neither did he allege

facts well within the mainstream of constitutional law.  (ECF No. 8-1, Exh. 6 at 17-20.)

Therefore, ground eleven was not fairly presented and is procedurally defaulted.[6]

Andera did, however, argue before the state appellate court that trial counsel was

---

[6]  Federal courts will not consider the merits of procedurally defaulted claims, unless the
petitioner demonstrates cause for the default and prejudice resulting therefrom, or where
failure to review the claim would result in a fundamental miscarriage of justice.  *See*
*Lundgren*, 440 F.3d at 763 (*citing Wainwright*, 433 U.S. at 87.)  "Demonstrating cause
requires showing that an 'objective factor external to the defense impeded counsel's
efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412,
417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Here,
Andera has failed to present any cause for his default or alleged a manifest miscarriage of
justice.  In fact, Andera's traverse is unresponsive to Respondent's claim that ground
eleven is defaulted.  (ECF No. 11 at 22-25.)

ineffective for failing to provide similar cases with less severe sentences.  (ECF No. 8-1, Exh. 6 at 20.)  He also makes this argument in his petition and traverse.  (ECF Nos. 1 & 11.)

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id.*  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The state appellate court did not address Andera's ineffective assistance of counsel claim.  It did, however, address Andera's claim – that his conviction was contrary to Ohio law – as follows:

> [*P76]  In the instant case, defendant was sentenced to seven years in prison for the homicide, which is a second degree felony punishable by two to eight years in prison and fours years in prison for each assault, third degree felonies punishable by one to five years in prison.  The court ran defendant's sentences consecutively, for a total of 15 years in prison.  This is within the statutory range for defendant's convictions. Additionally, the court suspended defendant's driver's license for life, which is also within the statutory range. R.C. 4511.19(G); R.C. 4510.02. As such, defendant's sentence is not contrary to law.

> [*P77]  In turning to the second prong of *Kalish*, we review defendant's sentence

-30-

for an abuse of discretion. Defendant argues that his sentence is not proportionate to other sentences in similar cases. R.C. 2929.11(B) states that a felony sentence shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

[*P78]  Consistency in felony sentencing is ensured by the statutory factors and guidelines found in R.C. 2929.11, R.C. 2929.12, R.C. 2929.13, and R.C. 2929.14. Thus, for a sentence to be "inconsistent," it must be contrary to law or the trial court must have abused its discretion by imposing it.  *See State v. Georgakopoulos*, Cuyahoga App. No. 81934, 2003 Ohio 4341, at P23 (holding that "[s]imply pointing out an individual or series of cases with different results will not necessarily establish a record of inconsistency"); *State v. Rutter*, Muskingham App. No. 2006-CA-0025, 2006 Ohio 4061 (applying *Georgakopoulos* post-*Foster*).

[*P79]  The court stated that it sentenced defendant in the instant case to "punish you for this crime, to protect the public from your selfish actions in the future." The court noted that defendant knew what he was doing when he took "all the pills [he] wanted," then hid behind the argument that he was following his doctor's orders.  The court also stated that defendant abused drugs, had prior accidents when driving impaired, and took no responsibility for his actions.  The court stated in its final judgment entry that it took all the statutory factors into consideration when sentencing defendant.

[*P80]  This case is factually different from many other vehicular homicide and assault cases because defendant denied guilt and went to trial.  In many of the OVI related cases that defendant brought to the court's attention, the offenders pled guilty to driving under the influence, and in a sense, took responsibility for their actions.

*Andera*, 2010-Ohio-3304 at ¶¶76-80.

Essentially, the state appellate court found that Andera's sentence: (1) was within the statutory range and, therefore, not contrary to Ohio law, (2) did not result from abuse of discretion, and (3) was not "inconsistent" simply because other cases had different results.  Even if the Court assumed that trial counsel was ineffective for failing to draw the sentencing court's attention to these other cases, Andera must still establish prejudice.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional

-31-

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In

other words, a counsel's deficient performance must have "caused the defendant to lose what he

otherwise would probably have won" and it must have been "so manifestly ineffective that

defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d

222, 229 (6ᵗʰ Cir. 1992).  Given the state appellate court's finding regarding state sentencing law,

this Court cannot find that there is a reasonable probability that, but for counsel's unprofessional

errors, Andera's sentence would have been different.

I.     **Ground Twelve: Cumulative Error**

In his twelfth ground for relief, Andera asserts that he was deprived of a fundamentally fair

trial due to the alleged cumulative errors described in the preceding grounds for relief.  (ECF No.

11 at 25-26.)  "[T]he law of this Circuit is that cumulative error claims are not cognizable on

habeas [review] because the Supreme Court has not spoken on this issue." *Cross v. Stovall*, 238

Fed. Appx. 32, 41 (6ᵗʰ Cir. 2007), *cert. denied* 552 U.S. 981 (2007) (*quoting Williams v.*

*Anderson*, 460 F.3d 789, 816 (6ᵗʰ Cir. 2006)); *accord Morris v. Bell*, 2011 U.S. Dist. LEXIS

155039 at *196 (W.D. Tenn. Sept. 29, 2011)  Therefore, even if some of the actions previously

mentioned resulted in error, they are not cognizable under a cumulative error review and provide

no basis for relief.

## IV.  Conclusion

For the foregoing reasons, it is recommended that Andera's Petition be DENIED.

/s/ Greg White _____
U.S. MAGISTRATE JUDGE


Date: September 13, 2012

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).